IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

CORTNEY R. MARCUM,     *
                           *
    Plaintiff,          *
                           *
    v.                        *        CV 415-234
                           *
CITY OF RINCON, GEORGIA,     *
                           *
    Defendant.          *

## O R D E R

Before the Court is Defendant's motion for summary judgment. (Doc. 32.) The Clerk has given Plaintiff notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and the consequences of default. Therefore, the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have been satisfied. For the following reasons, Defendant's motion is **GRANTED**.

## I. BACKGROUND

This case arises out of Plaintiff's dismissal from Defendant City of Rincon's Police Department (the "CRPD"). Plaintiff claims she was fired because of her gender and in retaliation for filing a grievance with the Equal Employment

Opportunity Commission ("EEOC"). Making all inferences in favor of Plaintiff, the facts of the dispute are as follows.

In April 2012, shortly after graduating from the police academy, Plaintiff accepted a position as a police officer for the CRPD. (Marcum Dep., Doc. 32-3, at 22.) Although Defendant usually hired officers with prior law enforcement experience, Phillip Scholl, the CRPD Chief of Police, supported Plaintiff's hiring. (Id. at 23-24.) At the time, Plaintiff was the only female officer, but two more women were hired the following year. (Id. at 24; Scholl Aff., Doc. 32-8, ¶ 4.)

In August 2012, Plaintiff was reprimanded after she backed her patrol car into another driver at the scene of an accident. (Marcum Dep., Ex. 4, at 52.) Officer Joshua Moseley, Plaintiff's former partner, claims the accident was not Plaintiff's fault. (Moseley Dep., Doc. 32-5, at 38-39.) Plaintiff received a second reprimand on February 9, 2013, for failing to complete a case file, sign an arrest warrant, and submit an incident report in a timely fashion. (Marcum Dep., Ex. 7, at 59.) Around this time, Plaintiff was also accused of being rude to a member of the Rincon City Council during a softball game. (Scholl Aff. ¶ 5.) When Chief Scholl spoke to Plaintiff, she claimed she had not been to the ballfield in months. (Id.) However, when Chief Scholl mentioned Ashley Zoller, a CRPD clerk who the councilman said was at the game

2

with Plaintiff, Plaintiff confessed that she had attended the game but explained that Chief Scholl did not specify which ballfield.[1] (Id.) Plaintiff also denied having any contact with the councilman. (Marcum Dep. at 28.)

On February 14, 2013, Plaintiff requested to work off-duty for the Chatham County Sheriff's Department. (Scholl Aff. ¶ 6.) Chief Scholl denied her request and claims his decision was based on Plaintiff's misconduct and that she was still on her one-year new hire probationary period.[2] (Id.) Plaintiff maintains that other male officers were allowed to take off-duty work during their probationary period, but acknowledges that most of these officers had prior law enforcement experience. (Marcum Dep. at 37-38.)

Plaintiff received her third reprimand on April 5, 2013. (Id., Ex. 10, at 66.) Plaintiff had been assigned to prepare and perform a PowerPoint presentation on the challenges of being a female police officer, which was due April 4, 2013. (Marcum Dep. at 46, 57.) Plaintiff concedes she knew about the assignment and its formatting requirements but maintains she was not given a due date until 24 hours before the deadline. (Id.) When the deadline came, Plaintiff handed in "a few pages in Word

---

[1] Plaintiff claims the game was at Giles Park and that when Chief Scholl first spoke with her, he said Macomber Park. (Marcum Dep. at 28.)
[2] The email Chief Scholl wrote to Plaintiff only mentioned her probationary status and the possible liability for Defendant. (Marcum Dep., Ex. 8, at 60.)

3

format which looked like they had been put together hurriedly." (Scholl Aff. ¶ 8.) After Chief Scholl complained about the format, Plaintiff said she had a PowerPoint version on a thumb drive at home. (Marcum Dep. at 52-53.) When Plaintiff returned with the thumb drive, Chief Scholl discovered the file on the drive was also in Word format. (Id. at 54) Plaintiff insists that while she made a PowerPoint presentation, she accidentally converted the file by saving her draft in Word format. (Id. at 51.)

Plaintiff's problems at work escalated toward the end of June 2013. On June 17, Plaintiff was reprimanded for failing to maintain her patrol car. (Id., Ex. 12, at 71.) Plaintiff was also reprimanded after calling in sick three days in a row. (Adams Dep., Doc. 32-7, at 30; Scholl Dep., Ex. 20, at 47.) When Corporal John Adams, Plaintiff's supervisor, told her she would need a doctor's note, Plaintiff responded, "[f]uck them if they don't like it. There's not a damn thing they can do about it."[3] (Marcum Dep., Ex. 11, at 69.) Moreover, when Plaintiff returned to work, her doctor's note only addressed one absence. Plaintiff was given two reprimands for this episode: one for her

---

[3] Plaintiff claims she became upset because Corporal Adams said the doctor's note needed to explain the nature of her illness. (Marcum Decl. ¶ 5.)

4

insufficient doctor's note[4] and one for her reaction to Corporal Adams.

On June 18, 2013, Plaintiff was placed on administrative leave pending an internal affairs investigation into her failure to complete an incident report about a stolen trailer. (Id., Ex. 14, at 79.) The investigators found that Plaintiff failed to follow standard procedure for filing information, and on June 20, Plaintiff was suspended without pay for three days.[5] (Id.) When Chief Scholl tried to give Plaintiff her suspension notice, she refused to sign and claimed that CRPD policy entitled her to a copy of the internal affairs report. (Scholl Dep. at 43-44.) Chief Scholl ordered Plaintiff to leave the building but Plaintiff remained outside his office talking on her cell phone until Sergeant Jose Ramirez arrived to escort her off CRPD premises. (Marcum Dep. at 68.) This incident led to Plaintiff's seventh reprimand and another three-day suspension without pay, which began on June 26. (Id., Ex. 15, at 81.)

When Plaintiff returned from suspension, Chief Scholl had drafted her notice of termination. (Scholl Dep., Ex. 23, at 49.) However, after talking to Wesley Corbitt, Defendant's City Manager, Chief Scholl agreed to place Plaintiff on a six-month

---

[4] Chief Scholl said this reprimand was eventually withdrawn. (Scholl Dep. at 36.)
[5] Plaintiff maintains that another officer, who had allegedly started the incident report, was responsible for completing it. (Pl.'s Resp. to Def.'s Statement of Material Facts, Doc. 30, ¶ 20.)

5

corrective action plan. (Id. at 45.) Pursuant to that plan, Plaintiff's probation would be extended an additional six months. (Id.) If Plaintiff had no further misconduct, her probation would end in January 2014. (Id. at 46.) Plaintiff showed improvement under the corrective action plan. On October 6, 2013, Plaintiff received a commendation for her work on a runaway case. (Marcum Dep. at 75.) Plaintiff also received favorable remarks during her January 2014 review and was taken off probation. (Id. at 79; Scholl Dep. at 48.)

Plaintiff presumably began considering legal action against Defendant at some point before December 2013. Sometime during that month, Mr. Corbitt asked Plaintiff if she was considering legal action against Defendant and whether there was any way they could settle the dispute without litigation. (Marcum Dep. at 77.) Plaintiff told Mr. Corbitt that she would not talk about the matter and to speak to her attorney. (Id.) On April 11, 2014, Plaintiff filed a Charge of Discrimination ("Charge") with the EEOC claiming she had been the victim of sexual discrimination. (Id., Ex. 20, at 93.)

Plaintiff was terminated on July 7, 2014. Plaintiff's firing was allegedly due to a wrongful detention and a wrongful arrest, both of which occurred in June 2014. (Id., Ex. 23, at 117.) The wrongful detention dispute arose after Plaintiff arrested Jacob McFadden on June 15 for failing to register as a

6

sex offender. (Marcum Dep. at 89.) Four days later, Amy Kendrick, a clerk for the Effingham County Sheriff's Department, told Plaintiff that Mr. McFadden was not required to register as a sex offender and needed to be released. (Id. at 92.) However, Mr. McFadden was not released until July 1, 2014, after his attorney complained to the Chatham County District Attorney. (Ramirez Dep. at 62.) Before she was fired, Plaintiff told Sergeant Ramirez that she did not remember whether she told Corporal Adams about Mr. McFadden, which would presumably satisfy her duty to report issues up the chain of command. (Marcum Dep. at 93.) Plaintiff now claims she told Corporal Adams shortly after speaking with Ms. Kendrick. (Marcum Dep. at 92-93.)

The wrongful arrest occurred on June 24, 2014, when Plaintiff arrested Aguilar Tiniguar for unlicensed operation of a motor vehicle. (Id. at 97.) Because Mr. Tiniguar was driving on a private throughway, Chief Scholl believed the arrest was unsupported by Georgia law. (Scholl Dep. at 55.) The notice of termination cited this event and the detention of Mr. McFadden as grounds for firing Plaintiff. (Marcum Dep., Ex. 23, at 117.) Plaintiff appealed her termination claiming that she had authority to arrest Mr. Tiniguar and that she told Corporal Adams about Mr. McFadden but her appeal was denied. (Marcum Decl., Ex. 1, at 5; Scholl Aff. ¶ 15.)

7

On August 5, 2014, Plaintiff filed her second Charge with the EEOC. (Doc. 19-1, at 2.) On June 2, 2015, she received a "Notice of Right to Sue," which explained that more than 180 days had passed since Plaintiff filed her Charge and that the EEOC was terminating its processing of Plaintiff's Charge. (Id.)

On August 25, 2015, Plaintiff filed this action against Defendant and several individual defendants--who have since been dismissed--alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and 42 U.S.C. § 1983. Defendant now moves for summary judgment arguing that a reasonable jury could not find that Plaintiff was terminated due to a discriminatory animus or in retaliation for engaging in protected conduct.

## II. LEGAL STANDARD

A motion for summary judgment will be granted if there is no disputed material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Facts are material if they could affect the results of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must view facts in the light most favorable to the non-moving party and draw all inferences in its favor. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The

movant initially bears the burden of proof and must demonstrate the absence of a disputed material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must also show no reasonable jury could find for the non-moving party on any of the essential elements. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

If the movant carries its burden, the non-moving party must come forward with significant, probative evidence showing there is a material fact in dispute. Id. at 1116. The non-movant must respond with affidavits or other forms of evidence provided by Federal Rule of Civil Procedure 56. Id. at 1116 n.3. The non-movant cannot survive summary judgment by relying on its pleadings or conclusory statements. Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). After the non-movant has met this burden, summary judgment is granted only if "the combined body of evidence is still such that the movant would be entitled to a directed verdict at trial – that is, such that no reasonable jury could find for the non-movant." Fitzpatrick, 2 F.3d at 1116.

## III. DISCUSSION[6]

Plaintiff claims that her termination violated Title VII because it was inspired by hostility toward her gender and in retaliation for engaging in protected conduct. Defendant moves for summary judgment maintaining that Plaintiff was fired for being a bad police officer.

### A. Discrimination Claim

Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff can show gender discrimination by presenting direct evidence of discriminatory intent; statistical proof of disparate treatment; or circumstantial evidence sufficient to give rise to an inference of discrimination. Wright v. Southland Corp., 187 F.3d 1287, 1293 (11th Cir. 1999). To establish a *prima facie* case of discrimination, a plaintiff can follow the framework set by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, the plaintiff must show (1) she is a member of a protected class; (2) she was qualified for the position;

---

[6] Plaintiff concedes that summary judgment is appropriate with respect to her hostile work environment and ratification claims. (Pl.'s Resp. to Def.'s Conclusions of Law, Doc. 39, ¶¶ 2, 4.) Therefore, summary judgment for Counts Two and Four is **GRANTED**.

(3) she was subject to adverse employment action; and (4) she was treated less favorably than a similarly situated individual outside her protected class. Maynard v. Bd. of Regents of Div. of Universities of Fla. Dept. of Educ. ex rel. Univ. of S. Fla., 342 F.3d 1281, 1289 (11th Cir. 2003). The fourth prong requires that "the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999). If the plaintiff cannot identify a proper comparator, summary judgment may be granted "where no other evidence of discrimination is present." Holified v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

The plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. McDonnell Douglas, 411 U.S. at 802. Meeting this standard gives rise to a presumption of discriminatory intent, which the defendant must rebut by proffering a legitimate, nondiscriminatory reason for its action. Texas Dept. of Comty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). The defendant is only required to show that such a reason exists; it does not need to prove that reason was its actual motive. Walker v. NationsBank of Fla. N.A., 53 F.3d 1548, 1556 (11th Cir. 1995). If the defendant meets its burden of production, the plaintiff must then show that the defendant's

proffered reason was a pretext for its discriminatory motive. E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272-73 (11th Cir. 2002). In cases that involve the discriminatory application of workplace rules, a plaintiff can show pretext by proving (a) she did not break the rule or (b) her misconduct was similar to another worker, outside her protected class, who was not punished as severely. Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1363 (11th Cir. 1999). Establishing pretext is a heavy burden, and an employer's honest, but mistaken belief that an employee violated a workplace rule does not give rise to Title VII liability. Id. at 1363 n.3; Alvarez v. Royal Atlantic Developers, Inc., 610 F.3d 1253, 1266 (11th Cir. 2010) ("The question is whether her employers were dissatisfied with her for these or other non-discriminatory reasons, even if mistakenly or unfairly so, or instead merely used those complaints about [the employee] as cover for discriminating against her because of her [protected characteristic].").

Plaintiff has failed to establish a *prima facie* case of gender discrimination. While she satisfied the first three elements of McDonnell Douglas, Plaintiff has not identified a comparator who was treated more favorably. Plaintiff argues that because she told Corporal Adams, her supervisor, about Mr. McFadden, the fact that she was fired and Corporal Adams was not

gives rise to a presumption of discriminatory intent. To determine whether an employee is a proper comparator, courts look at each employee's disciplinary history as well as their alleged misconduct. Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1312-13, ("Plaintiff also claims that Clark was a similarly situated employee because she frequently was unprepared for work—she would have curlers in her hair and put makeup on during report—and had a pretty poor tardiness record. This claim, however, ignores that Plaintiff was not terminated only because she was unprepared; instead, she was terminated for being unprepared *and* insubordinate, in the light of an already deficient employment record." (emphasis in original)), opinion modified on other grounds by 151 F.3d 1321 (11th Cir. 1998). Even assuming Chief Scholl believed Corporal Adams was told about Mr. McFadden,[7] Plaintiff has not shown that Corporal Adams had a similar disciplinary history. Plaintiff was not fired solely because she did not release Mr. McFadden. Instead, Plaintiff's termination was the culmination of several instances of misconduct with increasingly severe punishments. Before her termination, Plaintiff had been written up on seven separate occasions, two of which resulted in three-day suspensions. See Section I., *supra*. While Plaintiff disputes the propriety of many of her reprimands, she concedes that she was insubordinate

---

[7] Corporal Adams has consistently denied that Plaintiff told him about Mr. McFadden. (Adams Dep. at 19; Scholl Aff. ¶ 15; Ramirez Dep. at 36.)

13

on several occasions. (Pl.'s Resp. to Def.'s Statement of Material Facts ¶¶ 10, 17, 19, 21.) There is no evidence in the record showing Corporal Adams had a comparable disciplinary history or that he engaged in such misconduct and went unpunished. Accordingly, Corporal Adams is not an appropriate comparator, and Plaintiff has not set out a *prima facie* case of discrimination.[8]

Assuming *arguendo* that Plaintiff established a *prima facie* case of sex discrimination, summary judgment would still be appropriate because she has not shown Defendant's nondiscriminatory reasons for firing her were pretextual. Defendant submitted evidence showing Plaintiff was fired for the mistaken arrest of Mr. Tiniguar and the mistaken detention of Mr. McFadden. (Marcum Dep., Ex. 23, at 117.) With respect to the arrest of Mr. Tiniguar, the record shows that before Plaintiff was terminated, she told Chief Scholl that her arrest was proper. (Ramirez Dep. at 32.) Nevertheless, "the pretext inquiry is concerned with the employer's perception of the employee's performance, not the employee's own beliefs." Hankins v. AirTran Airways, Inc., 237 F. App'x 513, 522 (11th Cir. 2007); Damon, 196 F.3d at 1363 n.3. Plaintiff needs

---

[8] Plaintiff's Amended Complaint also included an allegation that she was paid less than her male counterparts. Nevertheless, Plaintiff failed to identify a comparator, or even respond to the evidence cited in Defendant's motion showing the employees who were paid more than Plaintiff had more experience. (See Scholl Aff. ¶ 9.)

14

evidence showing, at the time she was terminated, Chief Scholl could not have honestly believed Plaintiff violated the rules that were used as grounds for her termination. See Cooper v. Southern Co., 390 F.3d 695, 740 (11th Cir. 2004), overruled on other grounds by Ash v. Tyson Foods, Inc., 547 U.S. 454, 457 (2006); Good v. Omni Hotels Mgmt. Corp., 2008 WL 11322930, at *40 (N.D. Ga. Aug. 15, 2008). Accordingly, even if Plaintiff's arrest was lawful, Chief Scholl's mistaken belief would not give rise to Title VII liability. Because Plaintiff has not produced evidence to suggest that Chief Scholl could not honestly believe Plaintiff's arrest was improper, there is no question of fact regarding pretext.[9]

Because she cannot identify a male comparator, Plaintiff has failed to establish a *prima facie* sex discrimination claim.[10] Even if Plaintiff met that burden, there is insufficient

---

[9] The detention of Mr. McFadden follows the same reasoning. The fact that Plaintiff now claims she told Corporal Adams about Mr. McFadden is irrelevant. What is important is what Chief Scholl knew when Plaintiff was fired. Plaintiff concedes that she told Sergeant Ramirez, who was investigating the incident to determine who was at fault, "I don't know if I notified [Adams]." (Marcum Dep. at 93; Pl.'s Resp. to Def.'s Statement of Material Facts ¶ 30.) Thus, the evidence in the record shows that when Plaintiff was terminated, Chief Scholl had a good faith belief that Plaintiff alone was responsible for prolonging the wrongful imprisonment of Mr. McFadden.

[10] Plaintiff fails to address other methods of establishing a *prima facie* case, such as the test set forth in Smith v. Lockheed-Martin Corp., 644 F.3d 1321 (11th Cir. 2011). Nevertheless, after reviewing the record, Plaintiff has not presented "'a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker.'" See Smith, 644 F.3d at 1328 (quoting Silverman v. Bd. of Educ., 637 F.3d 729, 733 (7th Cir. 2011)). Additionally, because Plaintiff failed to offer sufficient evidence to create a genuine issue of discrimination, she has also failed to satisfy the "mixed-motive" test. See Quigg v. Thomas Cty. Sch. Dist., 814 F.3d 1227, 1235 (11th Cir. 2016).

evidence to rebut Defendant's legitimate, nondiscriminatory reason for terminating Plaintiff. Accordingly, Defendant is entitled to summary judgment on Plaintiff's discrimination claim.

**B. Retaliation Claim**

Plaintiff's case fares no better when reframed as a retaliation complaint. To establish a *prima facie* retaliation claim, a plaintiff must present evidence showing "(1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events." Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994). As with discrimination, once the plaintiff has presented a *prima facie* claim, the defendant must proffer a legitimate, nondiscriminatory reason for its action, which the plaintiff must then show was a pretext for the defendant's true retaliatory motive. Perryman v. Johnson Prod., Inc., 698 F.2d 1138, 1142 (11th Cir. 1983).

Assuming *arguendo* that Plaintiff set out a *prima facie* case; she has not shown Defendant's nondiscriminatory reason for firing her was pretext. See Section III A., *supra*. The only evidence Plaintiff has to support pretext is that she was fired three months after filing her EEOC complaint. (Marcum Dep., Ex.

16

20, at 93; Marcum Dep., Ex. 23, at 117.) While temporal proximity can support finding pretext, a three-month gap is too great without additional evidence. See Redd v. United Parcel Service, Inc., 615 F. App'x 598, 606-07 (11th Cir. 2015) ("[T]hree-month disparity alone is insufficient."); Matias v. Sears Home Imrpovement Prods., Inc., 391 F. App'x 782, 787 (11th Cir. 2010) (finding a one month gap was insufficient to show pretext); Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). Moreover, when there is evidence that the employer contemplated adverse action before an employee engaged in protected activity, proximity alone cannot establish pretext. Drago v. Jenne, 453 F.3d 1301, 1308 (11th Cir. 2006). Here, Chief Scholl considered and took adverse employment action against Plaintiff long before she filed her EEOC charge. He even drafted a termination letter on June 26, 2013. (Scholl Dep., Ex. 23, at 49.) This letter followed two suspensions and multiple reprimands. (Scholl Dep., Ex. 19, at 46.) All of this occurred before Plaintiff filed her EEOC complaint on April 11, 2014. (Marcum Dep., Ex. 20, at 93.) Therefore, Plaintiff needed additional evidence beyond temporal proximity to show the nondiscriminatory reasons for firing her were pretextual.

The fact that Plaintiff was fired three months after filing an EEOC Charge is not sufficient evidence to support a finding

17

that her termination was in retaliation for engaging in protected conduct. Therefore, Defendant is entitled to summary judgment on Plaintiff's Title VII retaliation claim.[11]

### IV. CONCLUSION

Upon the foregoing and in due consideration, Defendant's motion for summary judgment (doc. 32) is **GRANTED**. The Clerk is directed to **ENTER JUDGMENT** in favor of Defendant and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 14th day of March, 2018.

```
_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
```

---

[11] Plaintiff's Amended Complaint also includes a retaliation claim under the Equal Protection Clause of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983. However, the Eleventh Circuit does not recognize such a cause of action. Watkins v. Bowden, 105 F.3d 1344, 1354-55 (11th Cir. 1997) ("A pure or generic retaliation claim, however, simply does not implicate the Equal Protection Clause.").